James A. Hunter (JH-1910)
HUNTER & KMIEC
255 West 94th Street, No. 10M
New York, New York  10025
Tel:      (646) 666-0122
Fax:      (646) 462-3356
E-Mail: hunter@hunterkmiec.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA ANN GABRIELE CHECHELE, <br><br> Plaintiff, <br><br> – v. – <br><br> DANIEL R. BATY, <br><br> Defendant, <br><br> – and – <br><br> RED LION HOTELS CORPORATION, <br><br> Nominal Defendant. | ECF CASE <br><br> No. _____ <br><br> COMPLAINT FOR RECOVERY OF SHORT-SWING PROFIT UNDER 15 U.S.C. § 78p(b) |

Plaintiff Donna Ann Gabriele Chechele ("Plaintiff"), by her undersigned

attorneys, hereby complains of Defendants, averring as follows:

**INTRODUCTION**

1.      This is an action for disgorgement of "short-swing" profit under

Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C.

§ 78p(b).

2.      Section 16 is the "original and only express 'insider' trading provision[]" of the Act.  Richard W. Jennings et al., Securities Regulation: Cases and Materials 1202 (8th ed. 1998).  Its stated purpose is to "prevent[] the unfair use of information that may have been obtained by [an insider] by reason of his relationship to the issuer."  *Id.* § 78p(a).

3.      Section 16 applies to the directors and officers of every issuer with a class of publicly traded equity securities.  *Id.* § 78p(a), (b).  It also applies to any beneficial owner of more than 10% of any such class.  *Id.*  If any such beneficial owner, director, or officer realizes a profit from any purchase and sale, or sale and purchase, of the issuer's equity securities within a period of less than six months, then Section 16(b) requires him to disgorge that profit to the issuer.  *Id.* § 78p(b).  If he does not disgorge it, Section 16(b) empowers the issuer, or "the owner of any security of the issuer," to bring suit to recover it.  *Id.*

4.      Section 16(b) liability is strict.  The insider must disgorge his profit from a "short-swing" transaction "irrespective of [his] intention . . . in entering into such transaction."  *Id.*  Recovery never depends on proof of scienter or the actual misuse of inside information.  *See Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972).

5.      Plaintiff, a shareholder of Red Lion Hotels Corporation ("Red Lion"), brings this suit against one of Red Lion's largest investors, Daniel R. Baty ("Baty").  While subject to Section 16 of the Act, Baty realized tens of thousands of dollars in "short-swing" profit from his purchases and sales of Red Lion's equity

securities.  Under Section 16(b), this profit is now Red Lion's lawful property, which Baty is strictly liable to account for and repay.

## JURISDICTION AND VENUE

6.     Jurisdiction is conferred on this Court by Section 27 of the Act, 15 U.S.C. § 78aa, and by 28 U.S.C. § 1331.

7.     Venue lies in this District under Section 27 of the Act (a) because Baty transacts business in this District; and (b) because certain of the transactions described in paragraphs 21 and 26-27 below were executed through the facilities of the New York Stock Exchange LLC, a national securities exchange registered under Section 6 of the Act, 15 U.S.C. § 78f, and located in this District.

## THE PARTIES

### The Parties to This Action

8.     Plaintiff Donna Ann Gabriele Chechele is a natural person, a resident of the State of New Jersey, and a shareholder of Red Lion.

9.     Defendant Baty is a natural person and a resident of the State of Washington.

10.     Nominal Defendant Red Lion is a corporation formed under the law of the State of Washington with a principal place of business located therein.  At all relevant times, Red Lion's common stock was registered under Section 12 of the Act, 15 U.S.C. § 78*l*, and was listed for trading on the New York Stock Exchange.  Plaintiff

brings this action in the right and for the benefit of Red Lion, which is named as a

nominal defendant solely to have all necessary parties before the Court.

**Other Relevant Parties**

11.     Columbia Pacific Advisers, LLC (the "Adviser") is a limited

liability company formed under the law of the State of Washington with a principal place

of business located therein.  Baty founded the Adviser with his son Stanley Baty and a

third individual named Alexander Washburn, and the three continue to serve as the

Adviser's managing members.

12.     Columbia Pacific Opportunity Fund, L.P. (the "Opportunity

Fund") is a limited partnership formed under the law of the State of Washington with a

principal place of business located therein.  At all relevant times, the Adviser served as

the Opportunity Fund's general partner.  At the time of the transactions described herein,

Baty had approximately an 8.7% equity interest in the Opportunity Fund.

13.     Columbia Pacific Real Estate Fund II, LP (the "Real Estate Fund"

and, collectively with the Opportunity Fund, the "Funds") is a limited partnership formed

under the law of the State of Delaware with a principal place of business located in the

State of Washington.  At all relevant times, the Adviser served as the Real Estate Fund's

investment manager.  At the time of the transactions described herein, Baty had

approximately a 15% equity interest in the Real Estate Fund.

14.     Shelbourne Falcon RLHC Stock Investors LLC ("Shelbourne") is a

limited liability company formed under the law of the State of Delaware with a principal

place of business located in the Commonwealth of Pennsylvania.  Baty formed

Shelbourne with the Real Estate Fund and another party as a vehicle to invest in a joint venture with Red Lion to acquire and renovate 12 of the latter's hotels.  Baty has an indirect equity interest in Shelbourne, both through the Real Estate Fund's stake and through a separate investment of his own.

## FACTS

15.    At all relevant times, Baty was subject to Section 16 of the Act as a beneficial owner of more than 10% of the outstanding shares of Red Lion's common stock.

16.    Most of the Red Lion securities beneficially owned by Baty were held directly by the Opportunity Fund or the Real Estate Fund.  Baty beneficially owned those securities because he had or shared the power to vote or dispose of them as a managing member of the Adviser.  By virtue of his investment in the Funds, Baty also stood to profit from any appreciation in the value of their portfolios.

17.    While subject to Section 16 of the Act, Baty participated in the transactions in Red Lion's common stock and derivative securities described in the following paragraphs.

### The Transactions

18.    On January 16, 2015, Shelbourne entered into a joint venture with Red Lion to acquire and renovate 12 Red Lion hotels and refinance Red Lion's outstanding debt.  In consideration for Shelbourne's investment in the joint venture, Red Lion issued Shelbourne warrants to purchase 442,533 shares of Red Lion common stock.

Baty had an indirect pecuniary interest in the warrants through his indirect investment in Shelbourne.

19.     Under SEC rules, Shelbourne's acquisition of the warrants established a "call equivalent position" in Red Lion's common stock.  *See* Rule 16a-1(b), (c), 17 C.F.R. § 240.16a-1(b), (c).  A call equivalent position is akin to owning the underlying stock because the position "increases in value as the value of the underlying equity increases."  *Id.* § 240.16a-1(b).  The establishment of this call equivalent position was "deemed a purchase of the underlying security for purposes of section 16(b)." Rule 16b-6(a), 17 C.F.R. § 240.16b-6(a).

20.     That purchase was matchable with any sale within less than six months.  The contemporaneous price of Red Lion's common stock on the date the warrant was acquired supplies the purchase price for purposes of profit calculation.  *See* Rule 16b-6(c)(2), 17 C.F.R. § 240.16b-6(c)(2).  The closing price of Red Lion's publicly traded common stock on January 16, 2015 was $6.31 per share.

21.     In addition to his interest in Shelbourne's warrant, Baty made a substantial stock purchase of his own on January 21, 2015.  He purchased a total of 100,000 shares of Red Lion's common stock on the open market at the following prices:

| Date of Transaction | Transaction | Number of Shares | Price per Share |
| --- | --- | --- | --- |
| 01/21/2015 | Purchase | 92,459 | $6.35 |
| 01/21/2015 | Purchase | 800 | $6.34 |
| 01/21/2015 | Purchase | 100 | $6.34 |
| 01/21/2015 | Purchase | 6,300 | $6.35 |

| Date of Transaction | Transaction | Number of Shares | Price per Share |
|---|---|---|---|
| 01/21/2015 | Purchase | 100 | $6.33 |
| 01/21/2015 | Purchase | 141 | $6.34 |
| 01/21/2015 | Purchase | 100 | $6.35 |

22.     Less than six months later, on June 15, 2015, the Opportunity Fund sold 2,987,343 shares of Red Lion's common stock at a price equal to $7.00 per share. Baty had in indirect pecuniary interest in the sale through his investment in the Opportunity Fund.

23.     The Opportunity Fund disclosed the June 2015 sale in a Statement of Changes in Beneficial Ownership on Form 4 filed with the SEC on November 23, 2015.  A true and correct copy of that filing, in the form in which Plaintiff's counsel downloaded it from the SEC's Electronic Data Gathering, Analysis, and Retrieval (EDGAR) system, is attached as Exhibit A to this complaint.

24.     None of the other transactions described above was disclosed under Section 16(a) of the Act.  The transactions are known only because they were disclosed on statements filed with the SEC under Section 13(d).  Baty filed those statements on January 21, 2015, January 22, 2015, June 17, 2015, and November 3, 2016 (collectively, the "13D Statements").  True and correct copies of the 13D Statements, in the form in which Plaintiff's counsel downloaded them from the SEC's EDGAR system, are attached as Exhibits B through E to this complaint.

25.     The instructions to Schedule 13D call for disclosure of any transactions in the 60 days prior to filing.  Although transactions outside that window are

not subject to disclosure, they can often be inferred from the remaining information in the filing.  Changes in beneficial ownership that exceed the net total shares purchased or sold in the prior 60 days indicate that additional undisclosed transactions must have occurred outside the disclosure window.

26.     In this case, the information in the 13D Statements confirms that Baty engaged in at least one undisclosed transaction in Red Lion's common stock.  The 13D Statement filed on November 3, 2016 disclosed a sale of 500,000 shares by the Opportunity Fund.  That sale reduced Baty's beneficial ownership of Red Lion's common stock because Baty had sole or shared power to vote and dispose of the securities in the Opportunity Fund's portfolio.

27.     But the same statement also disclosed that Baty's beneficial ownership of Red Lion common stock declined by 530,559 shares since the last 13D Statement filed on June 17, 2015.  The discrepancy between the Opportunity Fund's 500,000-share sale and the 530,559-share decline in Baty's beneficial ownership implies that he sold an additional 30,559 shares between June 17, 2015 and November 3, 2016.

### Profit Calculation
### and Plaintiff's Demand

28.     The purchases described in paragraphs 18-21 above are matchable with the sale described in paragraph 22 above to the extent of Baty's pecuniary interest in the transactions.  The purchases are also matchable with the undisclosed sale described in paragraph 27 above, provided that it took place no later than July 19, 2015.

29.     The following table summarizes the transactions in Red Lion's equity securities for which Baty is responsible under Section 16(b) of the Act:

| Date of Transaction | Transaction | Number of Shares | Price per Share |
|---|---|---|---|
| 01/16/2015 | Purchase | 442,533   (1) | $6.31   (2) |
| 01/21/2015 | Purchase | 92,459 | $6.35 |
| 01/21/2015 | Purchase | 800 | $6.34 |
| 01/21/2015 | Purchase | 100 | $6.34 |
| 01/21/2015 | Purchase | 6,300 | $6.35 |
| 01/21/2015 | Purchase | 100 | $6.33 |
| 01/21/2015 | Purchase | 141 | $6.34 |
| 01/21/2015 | Purchase | 100 | $6.35 |
| 06/15/2015 | Sale | 2,987,343   (3) | $7.00 |
| (4) | Sale | 30,559 | (4) |

(1)   Transaction by Shelbourne.  Recovery is sought to the extent of Baty's pecuniary interest.

(2)   Closing price of Red Lion's publicly traded common stock.  *See* Rule 16b-6(c)(2), 17 C.F.R. § 240.16b-6(c)(2).

(3)   Transaction by the Opportunity Fund.  Recovery is sought to the extent of Baty's pecuniary interest.

(4)   Sale of a net total of 30,559 shares at unknown prices on one or more unknown dates between June 17, 2015 and November 3, 2016.

30.     The transactions in the table above yielded Baty a substantial short-swing profit.  The precise amount of the profit can be known only after discovery and will depend on the terms of Baty's undisclosed transactions and on the precise extent of his pecuniary interest in the transactions by the Opportunity Fund and Shelbourne. Based on information currently available, Plaintiff estimates Baty's recoverable profit in the several tens of thousands of dollars.

31.     By letter of April 17, 2017, Plaintiff made demand on Red Lion for an accounting and recovery of Baty's short-swing profit.  The demand advised Red Lion

that Plaintiff would file suit within less than 60 days if necessary to shield the action from

Section 16(b)'s two-year statute of limitations.  Further delay would be a futile gesture,

Red Lion having notified Plaintiff's counsel by letter of June 6, 2017 that it does not

intend to take action against Baty.

**SOLE CLAIM FOR RELIEF:**
**DISGORGEMENT UNDER 15 U.S.C. § 78p(b)**
**(AGAINST DEFENDANT BATY)**

32.     Plaintiff realleges and incorporates by reference the allegations in

paragraphs 1-31 above.

33.     At all relevant times, Baty was subject to Section 16 of the Act as

the beneficial owner of more than 10% of the outstanding shares of Red Lion's common

stock.

34.     Baty purchased and sold Red Lion's equity securities, directly or

indirectly, as described further herein.

35.     Certain of Baty's sales of Red Lion's equity securities occurred

within less than six months of, and at higher prices than, certain of Baty's purchases of

Red Lion's equity securities.

36.     Baty had a direct or indirect pecuniary interest, in whole or in part,

in each purchase or sale of Red Lion's equity securities described herein.

37.     Under the "lowest-in, highest-out" method for computing realized

profit pursuant to Section 16(b) of the Act, Baty realized an estimated profit of tens of

thousands of dollars from his transactions in Red Lion's equity securities.

38.    Under Section 16(b) of the Act, the profit realized by Baty as described in paragraph 37 above inured to Red Lion and is Red Lion's lawful property, recoverable by Plaintiff in its stead, Red Lion having failed to seek recovery of the same.

## BASIS FOR ALLEGATIONS

39.    Plaintiff's allegations are made on information and belief, except the allegations in paragraph 8 above or where context indicates that the allegation is based on Plaintiff's personal knowledge.  The basis for Plaintiff's information and belief is the investigation of Plaintiff's counsel, which included a review of regulatory filings by Baty and Red Lion and communications with their representatives.

[*remainder of page intentionally left blank*]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court enter judgment:

(a)     Requiring Baty to account for and pay over to Red Lion the short-swing

profit realized and retained by him in violation of Section 16(b) of the Act,

together with appropriate pre- and post-judgment interest and the costs of

this suit;

(b)     Awarding Plaintiff her costs and disbursements including reasonable

attorney's, accountant's, and expert witness fees; and

(c)     Granting Plaintiff such further relief as this Court deems just and proper.


Dated: June 13, 2017
       New York, New York

                              HUNTER & KMIEC

                              By:   _____

                                    James A. Hunter
                                    255 West 94th Street, No. 10M
                                    New York, New York  10025
                                    Tel:     (646) 666-0122
                                    Fax:     (646) 462-3356
                                    E-Mail:  hunter@hunterkmiec.com

                              *Attorneys for Plaintiff*